STATE OF NORTH CAROLINA v. OSSIE SIMMONS

No. 33

(Filed 14 April 1971)

1. Criminal Law § 84— evidence obtained by unreasonable search — inadmissibility

Evidence obtained by unreasonable search is inadmissible in both Federal and State courts. U. S. Constitution, Amendments IV and V; N. C. Constitution, Art. I, § 15; G.S. 15-27.

2. Criminal Law § 84; Searches and Seizures § 1— seizure of evidence without search

The constitutional and statutory guarantee against unreasonable search and seizure does not prohibit seizure of evidence and its introduction into evidence on a subsequent prosecution where no search is required.

3. Criminal Law § 84; Searches and Seizures § 1— search of automobile without warrant

A police officer in the exercise of his duties may search an automobile or other conveyance without a search warrant when the existing facts and circumstances are sufficient to support a reasonable belief that the automobile or other conveyance carries contraband materials.

State v. Simmons

4. **Criminal Law § 84; Intoxicating Liquor § 12; Searches and Seizures § 1— non-transparent plastic jugs containing non-taxpaid liquor — warrantless seizure from automobile**

Police officers had reasonable cause to believe that plastic jugs which they observed in defendant's car contained non-taxpaid liquor, and the officers lawfully seized the plastic jugs without a warrant, notwithstanding the officers could not see the contents of the jugs, where the officers were looking for defendant's car and knew defendant by name, defendant tried to flee the officers by backing his car into the police car which blocked its path, the officers saw the plastic jugs while removing defendant from his car, and the officers knew that such jugs were commonly used as containers for non-taxpaid liquor; consequently, the trial court did not err in the admission of the non-taxpaid liquor discovered in the jugs and testimony relating to it. G.S. 18-6.

5. **Intoxicating Liquor § 12— use of plastic jugs to carry non-taxpaid liquor — relevancy of testimony**

In this prosecution for possession and transportation of non-taxpaid liquor wherein defendant contended that officers unlawfully seized plastic jugs containing non-taxpaid liquor from his car without a warrant, testimony by officers that the containers seized from defendant's car were of a type often used to carry non-taxpaid liquor was relevant and admissible.

APPEAL by defendant pursuant to G.S. 7A-30(1) from decision of the North Carolina Court of Appeals, 10 N.C. App. 259, 178 S.E. 2d 90, finding no error in the trial before *Bundy, J.,* at the 26 March 1970 Session of LENOIR.

Defendant was tried in District Court of Lenoir County on a warrant charging that "on or about the 22nd day of December, 1969, defendant named above [Ossie Simmons] (1) did unlawfully and wilfully have in his possession alcoholic beverages in the amount of 6 gallons, upon which the taxes imposed by the laws of the Congress of the United States and by the laws of the State of North Carolina had not been paid, (2) and did transport said whiskey, an intoxicating liquor. The transportation was done on a 1960 model Oldsmobile color blue & white License # BS2803." He was found guilty on both counts, and from sentence imposed defendant appealed to Superior Court.

In Superior Court on trial *de novo* the State offered testimony of Deputy Sheriffs Bob Garris and Leo Harper, which tended to show: On 22 December 1969 Garris received a telephone call at his home. As a result of the phone call he telephoned Harper to meet him at the Sheriff's office in Kinston. They left the office in a county patrol car and proceeded to Davis

Street and parked. After a short time Garris left the county car to see if the car they were looking for had arrived. After Garris left, Harper observed defendant's car, a blue and white Oldsmobile, pull into an alley at the Richard Greene Apartments, and Harper immediately drove the patrol car behind defendant's car so that defendant was blocked. Defendant left his car and walked toward the apartments. Harper called defendant by his given name and asked him to wait so that he could talk to him. Defendant thereupon jumped back into his automobile and, while trying to back out of the alley, bumped into the patrol car several times. Harper went to defendant's car and attempted to get him out of the car, and Garris, who had observed Harper move the patrol car, ran back to the scene. Both officers struggled with defendant and finally handcuffed and removed him from his automobile.

Harper testified that while he was standing on the sidewalk he saw a cardboard carton on the seat of defendant's automobile and two plastic jugs on the floor of the rear seat. He could see the tops of four of the jugs in the cardboard carton. Harper arrested defendant, and Garris brought the carton to the county car, where he opened a jug to determine its contents. Harper stated that in his opinion the plastic jugs contained non-taxpaid whiskey. Over objection, he stated:

"I have seen plastic jugs like this before. Most of the non-taxpaid whiskey . . . .

OBJECTION. OBJECTION OVERRULED. DEFENDANT'S EXCEPTION No. 4.

that you get these days is in that type of jug. . . .

. . . .

"The Federal Government got so tight on people seeling (sic) half-gallon jars, I think they went to this jug here."

Garris testified in corroboration of Harper and he also testified that he could see the carton and the top of the jugs in defendant's car from the sidewalk. He stated: "Most all the non-taxpaid whiskey I have seen in the last few years has been in this type jug."

Both officers testified on cross-examination that they could not see the contents of the jugs.

At the close of the State's evidence defendant moved that the case be dismissed. His motion was denied, and he excepted. Defendant offered no evidence and renewed his motion for dismissal. His motion was denied, and he excepted. The jury returned verdicts of guilty on both counts. The two counts were consolidated for judgment, and defendant was sentenced to imprisonment for a term of two years.

*Attorney General Morgan and Staff Attorney Lloyd for the State.*

*Turner and Harrison, by Fred W. Harrison, for defendant.*

BRANCH, Justice.

Defendant's principal contention is that the trial court erred in admitting evidence, over his objection and motion to suppress, concerning the non-taxpaid whiskey seized from his automobile.

[1-3]   Evidence obtained by unreasonable search is inadmissible in both Federal and State courts. U. S. Const., Amend. IV and V; N. C. Const., Art. I, § 15; G.S. 15-27; *Mapp v. Ohio,* 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S.Ct. 1684; *State v. Reams,* 277 N.C. 391, 178 S.E. 2d 65; *State v. Colson,* 274 N.C. 295, 163 S.E. 2d 376. It is equally well settled that the constitutional and statutory guarantee against unreasonable search and seizure does not prohibit seizure of evidence and its introduction into evidence on a subsequent prosecution where no search is required. *State v. Virgil,* 276 N.C. 217, 172 S.E. 2d 28; *State v. Giles,* 254 N.C. 499, 119 S.E. 2d 394; *State v. Bell,* 270 N.C. 25, 153 S.E. 2d 741. Automobiles and other conveyances may be searched without a warrant under circumstances that would not justify the search of a house, and a police officer in the exercise of his duties may search an automobile or other conveyance without a search warrant when the existing facts and circumstances are sufficient to support a reasonable belief that the automobile or other conveyance carries contraband materials. *Carroll v. U. S.,* 267 U.S. 132, 69 L. Ed. 543, 45 S.Ct. 280; *Chambers v. Maroney,* 399 U.S. 42, 26 L. Ed. 2d 419, 90 S.Ct. 1975; *State v. McCloud,* 276 N.C. 518, 173 S.E. 2d 753; *State v. Jordan,* 277 N.C. 341, 177 S.E. 2d 289; *Ramsey v. United States,* 27 F. 2d 502.

In *State v. McCloud, supra,* this Court, in overruling defendant's motion to suppress contraband material seized from his automobile without a search warrant, stated:

"Seizure of contraband, such as burglary tools, does not require a warrant when its presence is fully disclosed without necessity of search. *State v. Giles,* 254 N.C. 499, 119 S.E. 2d 394; *State v. Bell, supra; Goodwin v. U. S.,* 347 F. 2d 793; *U. S. v. Owens,* 346 F. 2d 329; *State v. Durham,* 367 S.W. 2d 619. See also 10 A.L.R. 3d 314, for a full note and collection of cases concerning lawfulness of search of a motor vehicle following arrest for traffic violation."

Accord: *State v. Craddock,* 272 N.C. 160, 158 S.E. 2d 25; *State v. Hammonds,* 241 N.C. 226, 85 S.E. 2d 133; *State v. Leach,* 272 N.C. 733, 158 S.E. 2d 782.

In *State v. Harper,* 235 N.C. 67, 69 S.E. 2d 164, defendant Harper drove up in his automobile, and one of the officers "by the use of his flashlight saw in defendant's car two ½ gallon jars containing white non-taxpaid liquor . . . The officer thereupon seized two jars of liquor and looked in the trunk of said car and found five cases of intoxicating liquor upon which the tax due the Federal Government had not been paid." Defendant made a motion to suppress the evidence on the ground of unlawful search. This Court, holding the evidence admissible, stated: "In this case, the officer saw and recognized the liquor in defendant's car. It then became his duty to act either with or without the aid of a search warrant. *S. v. Godette,* 188 N.C. 497, 125 S.E. 24." Accord: *State v. Harper,* 236 N.C. 371, 72 S.E. 2d 871.

In *State v. Ferguson,* 238 N.C. 656, 78 S.E. 2d 911, the State's evidence disclosed that at about 8:15 o'clock p.m. on 22 March 1953, two enforcement officers of the Mecklenburg County ABC Board stopped a Packard sedan near a drive-in theater on the Statesville-Charlotte highway. When the car stopped, the officers walked back to it and, looking in, saw on the floor-board back of the front seat a cardboard box containing twelve half-gallon fruit jars of white whiskey, upon which there were no revenue stamps of the State or Federal Government. Defendant moved to suppress the evidence concerning the non-taxpaid liquor. The Court held that the trial judge properly denied the motion, and stated:

"G.S. 18-6 provides, in so far as is material here, ' . . . that nothing in this section shall be construed to authorize any officer to search any automobile or other vehicle or baggage of any person without a search warrant duly issued, *except where the officer sees or has absolute personal knowledge that there is intoxicating liquor in such vehicle or baggage.*' (Italics added.)

"The uncontradicted evidence here is that Officer Moody stopped the car to make a routine check of the operator's driver's license. Following this, the officer saw and had absolute personal knowledge that there was intoxicating liquor in the automobile. This, by virtue of the express language of the statute, G.S. 18-6, dispensed with the necessity of a search warrant."

In connection with the holding in *State v. Ferguson, supra,* we note that Art. IV, Ch. 15, of the General Statutes of North Carolina, as rewritten and effective on 19 June 1969, in part states:

"§ 15-27. Exclusionary rule.—(a) No evidence obtained or facts discovered by means of an illegal search shall be competent as evidence in any trial."

The same 1969 Legislature amended G.S. 18-6, but left intact the provisions there contained which state:

" . . . When any officer of the law shall discover any person in the act of transporting, in violation of the law, intoxicating liquor, . . . it shall be his duty to seize any and all intoxicating liquor, and any and all equipment or materials designed or intended for use in the manufacture of intoxicating liquor, found therein being transported contrary to law. . . . Provided, that nothing in this section shall be construed to authorize any officer to search any automobile or other vehicle, or baggage of any person without a search warrant duly issued, except where the officer sees or has absolute personal knowledge that there is intoxicating liquor, equipment or materials designed or intended for use in the manufacture of intoxicating liquor, in such vehicle or baggage."

Defendant contends that instant case is distinguishable from *Harper* and *Ferguson* because the *contents* of the plastic contain-

ers were not visible to the officers standing outside the automobile.

The rationale of *Ferguson* and *Harper* must be that when the officers saw the liquid in containers generally used to contain and transport non-taxpaid liquor, under the circumstances then existing, they had sufficient reasonable cause to believe that the jars contained non-taxpaid liquor to justify the seizure of the contraband without a search warrant. Obviously, they could not have known with absolute certainty that the liquid in the jars was non-taxpaid liquor. Both *Harper* and *Ferguson* involved non-taxpaid liquor contained in transparent jars. Here, the illicit liquor was contained and transported in plastic jars of a type which, according to both officers, had been generally used as containers for non-taxpaid liquor for several years because "the Federal Government got so tight on people seeling *(sic)* half-gallon jars . . . . "

Other jurisdictions have held that the observation by officers of certain types of non-transparent containers is one of the circumstances affording such reasonable belief or probable cause that the motor vehicle carried contraband materials as would justify search of the vehicle without a warrant.

In the case of *Rowland v. Commonwealth,* 202 Ky. 92, 259 S.W. 33, the defendant saw police officers stop an automobile in front of him and attempted to turn around in the road. The officers put a spotlight on his car and defendant jumped out and started to run. He left his car door open, exposing one *keg* of "moonshine" whiskey to view. The officers, without a search warrant, searched the car and found 100 gallons of "moonshine" whiskey. Defendant contended that the officers had no right to search his car. The Kentucky Court of Appeals, rejecting this argument, stated:

" . . . [N]o search warrant was necessary, since it is shown in evidence that the whisky in the keg in the car was exposed to view. We have held in several cases, including *Royce v. Commonwealth,* 194 Ky. 480, 239 S.W. 795, *Helton v. Commonwealth,* 195 Ky. 678, 243 S.W. 918; *Commonwealth v. Warner & Honer,* 198 Ky., 784, 250 S.W. 86, and *Commonwealth v. Riley,* 192 Ky. 153, 232 S.W. 630, that, where the article sought is in plain view, so that it is not necessary for the officers to search the car or other prem-

ises in order to see and know of the existence of the article sought, the arrest may be made and the articles taken as if the officers had in their possession a search warrant directed against the particular car or premises . . . . "

In the case of *Edwards v. State,* 81 Okla. Crim. 296, 164 P. 2d 245, the court upheld a warrantless search where police officers knew defendant's reputation for selling illicit whiskey, and they conducted a search after observing bottles in *paper sacks* on the floor of defendant's automobile while it was parked in a public place.

In *Ramsey v. U. S., supra,* where officers had information as to the location of a load of non-taxpaid liquor, and upon going there saw a car containing a large quantity of materials in *"paper pokes"* used for carrying liquor, the Court held that the circumstances were sufficient to justify a search without warrant.

In *Hawthorne v. U. S.,* 37 F. 2d 316, where the lights of a government car revealed, through slats in the tail gate of a truck, what appeared to be *drums* used to contain alcohol, and officers had some information that the truck was used in transporting illicit liquor, the search and seizure of the contraband materials without a warrant was held legal.

In *People v. Glasgow,* 4 Cal. App. 3d 416, 84 Cal. Rptr. 671, police suspected that defendant was driving a stolen car. Defendant was unable to produce a registration slip, and police in the presence of the defendant were looking around the car for some sign of ownership. One of the investigating officers shone his flashlight into the car's interior and saw two brown paper bags resembling bricks. He recognized the "bricks" as being in the usual package form in which marijuana is brought out of Mexico in commercial shipments. He opened the door, took out the package, widened a small hole in the package, and determined that indeed the package contained marijuana. In holding that the evidence obtained without a warrant was admissible, the court stated: "Reasonable grounds for believing a package contains contraband may be adequately afforded by its shape, its design, and the manner in which it is carried."

[4] In instant case defendant's counsel in his brief to this Court and in his brief to the Court of Appeals admits that the

officers were looking for defendant's blue and white Oldsmobile. Defendant was known to at least one of the officers, who called him by his given name as defendant was walking away from his car which he had just parked in an alley. Defendant thereupon ran back to his car and tried to get out of the alley by backing into the county car which was blocking his car in the alley. While removing defendant from the car, the officers observed several plastic jugs commonly used as containers for non-taxpaid whiskey. The jugs were seized, and it was found that they did contain non-taxpaid whiskey.

We think that the facts and circumstances of this case were sufficient to furnish the officers reasonable ground to believe that defendant illegally possessed and illegally transported non-taxpaid liquor, and that they were justified in seizing from defendant's automobile the containers which were fully disclosed without necessity of search.

[5] Defendant's remaining assignment of error is that the trial court erroneously allowed the witnesses to testify that the containers seized from defendant's car are of the type often used to carry non-taxpaid liquor. He contends that the evidence was not relevant.

We adopt the conclusion and language of the Court of Appeals that "In our opinion the relevance of this evidence is too apparent to require discussion."

The decision of the Court of Appeals is

Affirmed.